Chester G. **GRYWCZYNSKI** and Frederick J. Ralston, Plaintiffs,

v.

**SHASTA BEVERAGES, INC.,** et al., Defendants.

No. C–83–5717 SAW.

United States District Court, N.D. California.

Oct. 23, 1984.

Steven C. Wolan, King, Johnson & Shapiro, Oakland, Cal., for plaintiffs.

Robert J. Smith, Morgan, Lewis & Bockius, Washington, D.C., Michael L. Wolfram, Morgan, Lewis & Bockius, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT

WEIGEL, Senior District Judge.

### BACKGROUND

Plaintiffs Chester G. Grywzcynski and Frederick J. Ralston brought this action against their former employer, Shasta Beverages, Inc. ("Shasta"), its parent corporation, Consolidated Foods Corporation ("Consolidated"), and the Consolidated Foods Pension Plan ("Plan"), alleging, *inter alia*, that they were discharged wrongfully and in violation of both Section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and the California Fair Employment and Housing Act, Cal. Gov't Code § 12941 (West 1980). Plaintiffs have also sued for intentional and negligent infliction of emotional distress arising from their discharge. Defendants now move for summary judgment with regard to the claims of: violation of Section 510 of ERISA; violation of the California Fair Employment and Housing Act; intentional infliction of emotional distress; and negligent infliction of emotional distress. Defendant Consolidated also seeks summary judgment with respect to all of the plaintiffs' claims.

## I. THE ERISA CLAIM

Defendants have moved for summary judgment on the ERISA claim on the grounds that the plaintiffs are barred from suing for interference with pension rights because they failed to exhaust the remedies available through the Plan's Pension and Employee Benefits Committee ("Committee") prior to bringing this action. This motion is denied on the grounds that (1) the administrative relief available through the Committee would have been inadequate to satisfy the plaintiffs' claim and (2) to require exhaustion of such procedures would unnecessarily burden the exercise and protection of pension plan participants' rights under Section 510.

██ Plaintiffs have alleged that they were fired as part of a "deliberate nationwide purge of long-term employees" (Plaintiffs Memorandum in Opposition to Motion for Summary Judgment) in order to deprive them of pension benefits which would necessarily have accrued to them in the future. This is a properly pleaded claim under Section 510 of ERISA, which provides in relevant part, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter." 29 U.S.C. § 1140; *see Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983 (S.D. N.Y.1982) (allegations of interference with future vesting of benefits sufficient for complaint under Section 510).

██ In their motion for summary judgment and supporting memoranda, defendants contend that the plaintiffs are estopped from pursuing judicial redress of their grievances because they have failed to exhaust internal plan procedures for benefit claims. Specifically, they contend

that plaintiffs should have submitted applications for benefits to the Committee, which would have ruled on them. If the Committee's decision had been unfavorable, plaintiffs could also have applied to the Committee for a full review of the claims.

Defendants offer the affidavit of Mr. Leo Contois, Chairman of the Committee, in which he states that Section 13.01 of the Plan gives the Committee "not only the power, right and authority, but also the fiduciary responsibility to fully investigate the factual basis underlying any claim." Contois Affidavit ¶ 6. This, they contend, demonstrates that intra-plan remedies were available to the plaintiffs and should have been pursued. The plain language of the Plan document contradicts this contention. Section 13.05 of the Plan expressly states, "[t]he Committee may rely upon data furnished by authorized officers of any Employer ... as to any ... information pertinent to any calculations or determinations to be made under the provisions of the Plan and the Committee shall have no duty to inquire into the correctness thereof." Defendants Exhibit C.

Not only is it doubtful whether the Committee has a duty to investigate the circumstances underlying a claim, it is also unlikely that the plaintiffs' claim falls within the purview of the Committee. Plaintiffs' claim is that Shasta violated Section 510 of ERISA itself while the Committee's authority is limited to deciding questions "arising under the Plan." Defendants Exhibit C § 13.01(b). Nor does it appear that the Committee could have provided any remedies for the plaintiffs; there is no sign that the Committee has the power to bind participating employers, whether to impose penalties or to otherwise enforce its decisions, find an employer violation. Even if "claims for unfair interference would have been and would be treated and processed as claims under the procedures and guidelines of the Plan" (Contois Affidavit ¶ 9) the Committee is nonetheless powerless to grant any significant measure of relief on the plaintiffs' claims.

The federal courts have the power to require exhaustion of intra-plan remedies in ERISA based disputes, and in most cases it is appropriate to do so. *See Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir. 1980). However,

> [t]here are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate.

*Winterberger v. General Teamsters, Local Union 162,* 558 F.2d 923, 925 (9th Cir. 1977).

This is just such an occasion. Our court of appeals has recognized that, in this regard, suits brought under Section 510 of ERISA differ fundamentally from other suits seeking declarations of the rights and duties of the parties to a pension plan. *See Amaro v. Continental Can Co.,* 724 F.2d 747, 750–52 (9th Cir.1984). The rights protected by Section 510 derive directly from the ERISA statute itself, unlike the plan-based rights for which Congress has mandated the establishment of internal appeal procedures. *See* Section 503 of ERISA, 29 U.S.C. § 1133; *id.* In Section 510 suits:

> We are faced solely with an alleged violation of a protection afforded by ERISA. There is no internal appeal procedure either mandated or recommended by ERISA to hear these claims. Furthermore, there is only a statute to interpret. That is a task for the judiciary, not an arbitrator.

*Id.* at 751.

The decisions relied upon by defendants, *Kross v. Western Electric Co., Inc.,* 534 F.Supp. 251 (N.D.Ill.1982), *affirmed in relevant part,* 701 F.2d 1238 (7th Cir.1983), and *Innocenti v. Shasta Beverages, Inc.,* No. Y–82–3370 (D.Md.1983) (slip op.), rest on very different reasoning and are in direct conflict with the law in this circuit. *See Amaro,* 724 F.2d at 752 ("[W]e find *Kross* to be based on a flawed premise, and we refuse to follow it.").

## II. THE AGE DISCRIMINATION CLAIM

Defendants have also moved for summary judgment on the plaintiffs' claim that they were terminated in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12941 (West 1980). Defendants argue that the plaintiffs failed to file their discrimination claims with the appropriate state or federal agencies within the time limits in that statute and are therefore barred from pressing their claims in this action. We agree and have granted defendants' motion.

Plaintiffs allege that Grywczynski was terminated as of September 21, 1979, and that Ralston was terminated as of November 30, 1979. On December 8, 1980, Grywczynski filed charges against Shasta with the federal Equal Employment Opportunity Commission ("EEOC") alleging that he had been terminated as a result of discriminatory practices. Ralston filed similar charges with the EEOC on June 27, 1981, almost a month *after* the commencement of this lawsuit. Thus, Grywczynski's EEOC charge came more than fourteen months, and Ralston's more than nineteen months, after they allege they were terminated.

Plaintiffs allege that they were fired in violation of the FEHA, Cal. Gov't Code § 12941 (West 1980). The FEHA is a comprehensive statutory scheme that encompasses various anti-discrimination statutes including the California Fair Employment Practices Act (former Labor Code §§ 1410 et seq.; *see* Stats.1959, ch. 121, § 1, p. 2000 et seq.). The FEHA not only designates illegal discriminatory conduct, it establishes specific procedures for enforcement of the rights it protects. Thus, California Government Code section 12965 provides that a person who believes himself aggrieved by discriminatory conduct in violation of the statute may file a complaint with the California Department of Fair Employment and Housing ("DFEH"). However, "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred" unless the aggrieved party learns of the alleged illegality "after one year has passed." Cal. Gov't Code § 12965 (West 1980).

Compliance with the administrative procedures set forth in the statute is a prerequisite for any private civil suit for age discrimination under California law. *See Bennett v. Borden, Inc.*, 56 Cal.App.3d 706, 128 Cal.Rptr. 627 (1976); *see also Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 185 Cal.Rptr. 270, 275, 649 P.2d 912 (1982) (right to sue under California discrimination statute "surely is 'limited,' in the sense that extensive administrative procedures are a precondition to its accrual"). Compliance with the one year time limit of Section 12965 is among these preconditions. *Cf. Operating Eng'rs Local 12 v. Fair Employment Practice Comm'n*, 276 Cal.App.2d 504, 509–10, 81 Cal.Rptr. 47 (1969), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1356, 25 L.Ed. 648 (1970) (equating language of Cal.Lab.Code § 1422—predecessor to Cal. Gov't Code § 12965—with language of § 10(b) of the NLRA, 29 U.S.C. § 160(b), and noting that the latter section had been "deemed to constitute a statute of limitations") (citing *Local Lodge No. 1424, I.A.M. v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). Where there is an established administrative mechanism in place to give notice to employers charged with violation and to undertake efforts at conciliation, it would be anomalous indeed to hold that the one year filing requirement in Section 12965 was anything other than a statute of limitations. Even on the basis of plaintiffs own allegations, it is clear that plaintiffs did not satisfy the statute.

Plaintiffs also appear to be arguing that because they filed charges with the EEOC initially, rather than with the California DFEH, their California discrimination claims should somehow be governed by the statute of limitations for the federal anti-discrimination statute. Not only is this argument unsupported by any of the authority the plaintiffs offer, it is unavailing in any event; under the federal Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. §§ 621 et seq., the time limits for filing discrimination charges with the EEOC are actually *shorter* than those for filing charges under the California statute. *Compare* 29 U.S.C. 626(d)(2) (300 days maximum) *with* Cal. Gov't Code § 12965 (West 1980) (one year). As with the California statute, compliance with the administrative procedures of the ADEA is a precondition for any subsequent private suit. *See Powell v. Southwestern Bell Tel.,* 494 F.2d 485, 488 (5th Cir.1974). *Bean v. Crocker Nat'l Bank,* 600 F.2d 754 (9th Cir.1979), which the plaintiffs cite as authority for their position, is not to the contrary; it holds only that where federal procedures have been complied with, failure to satisfy state requirements does not bar individual suit under the ADEA.

■ In an attempt to bolster their arguments plaintiffs point to the letters they received from the California DFEH and from the EEOC notifying them that those agencies were taking no further action and that they could pursue their individual civil remedies if they chose. Such letters are issued as a matter of course by the agencies in question when they conclude their investigations. The California statute provides that whenever the DFEH determines that no accusation will issue (or within 150 days at the latest), the DFEH must notify the person charging the violation. This notice must "indicate that the person claiming to be aggrieved may bring a civil action ... within one year from the date of such notice." Cal. Gov't Code § 12965 (West 1980). This additional statute of limitations does not relieve the prospective plaintiff of the duty to meet the time limits for the original filing of the DFEH, it simply imposes further time limits on any subsequent civil suit.

■ The same is true for the EEOC's notice to the plaintiffs. In fact, the EEOC letter explicitly states, "[t]he fact that the Commission will take no further action *does not affect* your right to take legal action on your own behalf." Plaintiffs' Exhibit F (emphasis added). The plaintiffs have offered no support for their assertion that "Since the EEOC, Itself, Assumed Jurisdiction Over Plaintiffs' Age Claims, Defendants Do Not have Standing to Challenge This Compliance." Memorandum in Opposition to Motion for Summary Judgment at 19. *Contra, e.g., Powell v. Southwestern Bell Tel.,* 494 F.2d 485, 488 (5th Cir.1974) (compliance with timely filing requirement of 29 U.S.C. § 626(d) is "condition precedent" for any subsequent lawsuit) (quoting *H.R.Rep. No. 805,* 90th Cong., 1st Sess. (1967), *1967 U.S.Code Cong. and Admin.News* pp. 2213, 2218).

■ Finally, plaintiffs argue that equity dictates that the statute of limitations for filing discrimination claims should be tolled in this case. However, they point to no facts to support such equitable tolling. There is no evidence, by way of affidavit or otherwise, of defendants' active concealment, fraud or deceit. *Cf. Franci v. Avco Corp.,* 460 F.Supp. 389 (D.Conn.1978). Nor is there any evidence that the purposes underlying the time limitations in both the Federal and the California statutes—giving notice to defendants and providing an opportunity for conciliation—have otherwise been met.

## III. THE EMOTIONAL DISTRESS CLAIMS

■ Turning now to plaintiffs' Sixth and Seventh claims for relief, intentional and negligent infliction of emotional distress, these are barred by California's one year statute of limitations for personal injury torts. Cal.Civ.Proc.Code § 340(3) (West 1982). This does not alter the possibility that consequential damages could be awarded under the plaintiffs' "Second Cause of Action" for emotional distress that resulted from the defendants' alleged breach of an implied covenant of good faith and fair dealing. *Cf. State Farm Mut. Automobile Ins. v. Allstate Ins.,* 9 Cal. App.3d 508, 527, 88 Cal.Rptr. 246, 258 (1970) (award for pain and distress "proper even under a breach of contract theory"); *see also McDowell v. Union Mut. Life Ins.,* 404 F.Supp. 136 (C.D.Cal.1975) ("the tortious invasion of intangible property inter-

ests is to be controlled by the two year statute of limitations covering actions upon 'a contract obligation or liability not founded upon an instrument [of] writing . . . .' '') (quoting Cal.Civ.Proc. Code § 339(1)) (citing, *inter alia, TU–VU Drive-In Corp. v. Davies,* 66 Cal.2d 435, 58 Cal.Rptr. 105, 426 P.2d 505 (1967)).

Plaintiffs' claims for infliction of emotional distress—to the extent that they are not time-barred—must be deemed to arise from a contractual, rather than a tort, cause of action. *See McDowell* at 147–48 (plaintiff may recover emotional distress damages in a timely filed action for breach of implied covenant of good faith but separate claims for intentional infliction of emotional distress are time-barred under Cal. Civ.Proc.Code § 340(3)); *Murphy v. Allstate Ins.,* 83 Cal.App.3d 38, 50, 147 Cal. Rptr. 565 (1978) (same). Because of this, plaintiffs are now precluded from seeking punitive damages for their alleged emotional injury. *See Crogan v. Metz,* 47 Cal.2d 398, 405, 303 P.2d 1029, 1033 (1956) ("[Punitive damages] may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent."); *see also* Cal.Civ.Code § 3294 (West 1970) ("In an action for the breach of an obligation *not arising from contract,* where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant.") (emphasis added).

As plaintiffs' claims for infliction of emotional distress are time-barred, it is unnecessary to decide whether, as defendants argue, the claim of *negligent* infliction of emotional distress is also preempted by the California Workers' Compensation Act, Cal. Lab.Code §§ 3600 et seq. (West 1971). This does, however, appear to be the case. *See Russell v. Massachusetts Mut. Life Ins.,* 722 F.2d 482, 493 (9th Cir.1983); *McGee v. McNally,* 119 Cal.App.3d 891, 174 Cal.Rptr. 253 (1981); *Renteria v. County of Orange,* 82 Cal.App.3d 833, 147 Cal. Rptr. 447 (1978).

## IV. CONSOLIDATED'S MOTION FOR DISMISSAL

Plaintiffs have alleged that Consolidated (parent) and Shasta (subsidiary) acted in concert in a nationwide purge of between fifty and one hundred long-term managerial employees. By itself this is sufficient to state a claim against both companies. Plaintiffs have not, however, produced any evidence to support their claim that Consolidated was involved in the decisions to terminate them. By contrast, defendants have offered the affidavit of Mr. David W. Delker, a Senior Vice President of Shasta Beverages who is responsible for the Human Resources Department of that company. He states, "[a]ll personnel decisions affecting Shasta employees are made by Shasta officials, not by Consolidated Foods Corporation." Delker Affidavit ¶ 9. As Mr. Delker's affirmations are uncontradicted, we see no reason to depart from the usual presumption that a subsidiary corporation is legally separate from its parent. *See Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East,* 542 F.2d 1053, 1063 (9th Cir.1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977).

## V. ORDER

For the reasons above set forth:

IT IS HEREBY ORDERED that defendants' motion for summary judgment as to plaintiffs' Third Cause of Action is DENIED.

IT IS HEREBY ORDERED that plaintiffs' Fifth, Sixth, and Seventh Causes of Action are hereby DISMISSED; and

IT IS HEREBY ORDERED that defendant Consolidated Foods Corporation's motion for summary judgment as to the Second Amended Complaint is GRANTED.