**Garnet C. BURDETTE, Plaintiff,**

v.

**MEPCO/ELECTRA, INC., a North American Philips Company, Defendant.**

**Civ. No. 86–0736–E.**

United States District Court, S.D. California.

April 7, 1987.

Gordon E. von Kalinowski, San Diego, Cal., for plaintiff.

Stephen J. Schultz, David P. Wolds, Mark T. Bennett, Merrill, Schultz & Wolds, Ltd., San Diego, Cal., for defendant.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### STATEMENT OF FACTS

Plaintiff Garnet Burdette is a former employee of defendant Mepco/Electra, Inc. (hereinafter "Mepco"). On March 20, 1986, after having been laid off by Mepco, Burdette filed a complaint in this court setting out causes of action for: 1) breach of contract; 2) tortious breach of the implied covenant of good faith and fair dealing; 3) age discrimination; 4) fraud and deceit; and 5) negligent misrepresentation. Mepco answered on May 28, 1986 (amended June 4, 1986), and then moved for summary judgment on March 6, 1987. This motion is currently before the court.

On October 15, 1980, Burdette was hired by Mepco, and became associated with a line which produced "current limiters" (devices designed to regulate the flow of current through electrical circuitry). Burdette apparently never signed a formal employment contract with Mepco; moreover, according to Mepco, she never asked for a contract. Burdette herself, however, asserts firmly that she was employed pursuant to a "total employment agreement." This agreement, which is the basis for Burdette's instant breach of contract claims, allegedly existed throughout Burdette's employment with Mepco. The agreement purportedly contained the following terms:

1. Burdette would be employed indefinitely—for "so long as she carried out her duties in a proper and competent manner";
2. Burdette would not be demoted, discharged or otherwise disciplined in the absence of good cause and notice;
3. Mepco would not evaluate Burdette's performance in an arbitrary and capricious manner.

The agreement was memorialized through various writings, oral representations and the parties' course of conduct. In addition, according to Burdette, it is Mepco's established policy to grant permanent or indefinite tenure to employees, so that they are permitted to work until the age of 65. Burdette further declares that "again and again during her employment" she was told that her performance was satisfactory. She relied, understandably and in good faith, on these assurances and never sought alternative employment.

Burdette was laid off by Mepco on February 15, 1985. Mepco contends that the layoff was part of a firm-wide plan to reduce overhead in the face of a drastically contracting market. According to Mepco, orders for "variable resistor trimmers"—which accounted for over 90% of Mepco's operations, but which did not directly involve the "current limiter" line on which Burdette worked—fell off by 42% during the second half of 1984. An immediate reorganization of the San Diego production facility was called for, and it was decided that layoffs would be unavoidable. Non-production employees would be released first, and their jobs would be integrated with the jobs of other employees. Along with four others, Burdette was laid off at this time. Mepco had determined that Burdette's "limited education and technical training did not qualify her to perform a combined job function." Mepco pointed to Burdette's recent performance reviews, which were negative, and to her "marginal" overall ability. Other employees were laid off by Mepco in June and November of 1985, and by the end of the year the total

work force had been trimmed by twenty percent. Of all of the employees laid off, which included managers and engineers with up to 12 years of experience and salaries more than double that of Burdette, only Burdette has sued Mepco for wrongful termination.

Burdette has sued, of course, because she views the events attendant to her termination in a quite different light. According to Burdette, her termination was motivated by age discrimination. That is, Burdette was laid off under the pretense of a firm-wide belt-tightening and her job was "combined" with that of a young man of considerably fewer years. (Burdette was 48 at the time and the successor to her duties was in his thirties.) Burdette has declared in her opposition to this motion that the current limiter line on which she worked was *not* suffering from a rollback in orders, but rather that the operation was expanding. Moreover, she notes that, unlike the other employees laid off with her, she worked in a *production* capacity. Finally, Burdette asserts that even as late as the month of her layoff she was told by her supervisor that she was "doing a good job."

After having been laid off, Burdette filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH"). Burdette alleged that her termination was based on her medical condition at the time. On July 26, 1985, the DFEH issued a notice that Burdette's case would be closed in light of her election to pursue relief through judicial action. The instant complaint was filed on March 20, 1986. It sets out the facts and causes of action described above and then petitions for damages for loss of earnings, deferred compensation, other employment benefits, punitive damages, and costs of suit. It also seeks reinstatement of Burdette to her former position and a permanent injunction against Mepco's future unlawful practices.

## DISCUSSION

### I.

### *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c) a court may grant summary judgment where the pleadings, depositions, admissions and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In a recent discussion of this standard, the Supreme Court stated that summary judgment must be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). A party opposing summary judgment bears the duty to produce specific evidence which shows the existence of a triable issue of fact. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983).

The party moving for summary judgment bears the burden of proving that there is no genuine issue of material fact and that judgment may be entered as a matter of law. *International Union of Bricklayers & Allied Craftsmen Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985). Once that burden has been met, however, the opponent must answer with factual allegations revealing a genuine dispute of fact. *Id.* A dispute over a material fact is "genuine," according to a recent Supreme Court pronouncement, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Id.* at 2511. Furthermore, the "substantive evidentiary standards that apply to the case" must guide a judge in determining whether a factual dispute requires submission to a jury. *Id.* at 2514. The Court in *Anderson, supra,* went on to point out that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 2511.

## II.

### Mepco's Arguments

In constructing its argument for summary judgment, Mepco addresses each of Burdette's causes of action individually. For the sake of convenience, Mepco's approach and order will be followed below.

### A. ADEA Claim

One of the bases for Burdette's third claim for relief is the Age Discrimination in Employment Act ("ADEA"), codified at 29 U.S.C. §§ 626(b) and (c). Burdette alleges that Mepco "discriminated against [her] on the basis of age...." She also alleges that she filed a timely charge of discrimination with the California DFEH and that on July 29, 1985 she received a "Notice of Case Closure" from the DFEH because she had elected to pursue judicial redress.

■ Mepco argues that Burdette's filing with the DFEH is insufficient to support an ADEA claim, and that because Burdette did not file an age discrimination claim with the Equal Employment Opportunity Commission ("EEOC"), she has failed to exhaust her administrative remedies. Section 626(d) of Title 29 requires that a charge be filed with the EEOC before a civil suit may be brought: "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." See Dempsey v. Pacific Bell Co., 789 F.2d 1451, 1452 (9th Cir.1986). And failure to exhaust remedies bars a private suit under the ADEA. Grywczynski v. Shasta Beverages, Inc., 606 F.Supp. 61, 66 (N.D.Cal.1984).

■ Moreover, the bringing of a suit sooner than 60 days after filing with the EEOC is a jurisdictional defect which warrants the dismissal of a faulty complaint. In Dempsey, supra, the Ninth Circuit for the first time addressed the issue of whether the 60-day requirement is jurisdictional. Noting the purpose for the 60-day conciliation period—namely, that the EEOC be allowed an initial, non-litigious opportunity to resolve an employment dispute—the court held that the requirement is jurisdictional. The court went on to point out that, in the interest of equity, the limitations periods of section 626(d) could be tolled if a complainant's delay resulted from excusable ignorance and did not prejudice the defendant employer. But this would merely allow a late claim to be brought before the EEOC; it would not dispense with the requirement that an EEOC claim be instituted before a suit is brought in federal court.

Burdette's opposition sidesteps this issue, and there is no indication in the record that Burdette did file a charge before the EEOC. Therefore, the ADEA claim must be dismissed.

### B. FEHA Claim

■ Mepco further argues that Burdette cannot maintain an age discrimination claim under the California Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code § 12940 et seq.) (West 1980). The FEHA has been described by Judge Weigel as "a comprehensive statutory scheme that encompasses various anti-discrimination statutes including the California Fair Employment Practices Act...." Grywczynski, supra, at 65. The FEHA sets out detailed procedures which must be followed by a person who believes himself or herself to have been aggrieved by discriminatory conduct in violation of the statute. What is more, "[c]ompliance with the administrative procedures set forth in the statute is a prerequisite for any private civil suit for age discrimination under California law." Id. Although Burdette did file a claim under the FEHA, the grounding for that claim was discrimination on the basis of medical condition, not age. The court thus finds that Burdette has failed to exhaust her administrative remedies under the FEHA and is therefore barred from bringing a private suit under California law. Moreover, Burdette cannot now renew her FEHA age discrimination claim because it is time-barred; the statute has a one-year limitations period. Cal. Gov't Code § 12960 (West 1980). Summary judg-

ment is granted in favor of Mepco as to Burdette's third claim for relief.

## C. *Breach of Contract Claim*

As mentioned in the Statement of Facts above, Mepco firmly asserts that Burdette was not at any time employed pursuant to a contract; her claim for breach of employment contract (or breach of "total employment agreement") therefore must fail.

Burdette insists, contrariwise, that through various Mepco pamphlets, oral representations, and the conduct of her superiors she was employed under an employment agreement. The terms of that agreement included, *inter alia,* a promise not to discharge Burdette unless she failed to perform her job to a satisfactory level.

California courts recognize that a combination of oral representations to an employee, longevity of employment and an employer's written policies regarding the treatment of long-term employees can produce an implied-in-fact promise that an employee not be discharged without good cause. *See Cox v. Resilient Flooring Division of Congoleum Corporation,* 638 F.Supp. 726, 731 (C.D.Cal.1986); *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981); *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 455, 168 Cal.Rptr. 722 (1980). Burdette's theory of an implied "total employment agreement" thus warrants scrutiny.

One problem with the theory, however, is that the record (especially the deposition of Burdette submitted by Mepco) really doesn't evince such an agreement. Certainly an informal agreement existed throughout Burdette's employment. But whether that agreement included a promise of lifetime (or indefinite) employment is not at all clear. Also, whether the agreement was terminable at will, as oral employment contracts sometimes are held to be, is unclear.

A more weighty problem for Burdette is that an oral contract for employment until retirement probably violates the statute of frauds. Cal. Civil Code § 1624(1) (West 1985). In *Newfield v. Insurance Company of the West,* 156 Cal.App.3d 440, 446,

203 Cal.Rptr. 9 (1984), the Court of Appeal distinguished between oral contracts for "permanent" employment (which generally do *not* fall within the statute) and oral contracts which merely guarantee employment for more than one year. The court then held: "In such a situation when the terms of an oral agreement make it evident by clear implication from the subject matter of the contract that a period of longer than one year was contemplated by the parties, the statute of frauds applies to bar the action." *Id.* at 447, 203 Cal.Rptr. 9. *See also Hodge v. Evans Financial Corporation,* 778 F.2d 794, 801 (D.C.Cir.1985) (distinguishing between oral contracts of employment for life—not within statute—and oral contracts of employment until retirement—barred by the statute).

■ Assuming, *arguendo,* that there was an enforceable implied-in-fact contract underlying Burdette's employment, Mepco argues that such a contract would still be subject to termination for "good cause." (Burdette's own construction of her employment agreement, as noted above, appears to be in accord.) As the Court of Appeal stated in *Clutterham v. Coachmen Industries, Inc.,* 169 Cal.App.3d 1223, 1227 (1985), "Even when the implied promise of continued employment is found, it is only a promise not to terminate the employment without '... *some good reason* ...' or 'a fair and honest cause or reason....'" *Citing Pugh, supra,* 116 Cal.App.3d at 325, 330, 171 Cal.Rptr. 917. Mepco thus argues that good cause existed for Burdette's termination. Mepco further argues that this good cause defeats *all* of Burdette's state law claims, as discussed below. Finally, Mepco argues that summary judgment must be granted where good cause exists for termination. *See Clutterham, supra.*

The "good cause" for Burdette's layoff was, according to Mepco, the firm's need to reduce overhead in the wake of a severe decline in business fortunes. Mepco has presented declarations showing that overall orders dipped sharply in the six-month period prior to Burdette's termination, and Burdette has not disputed this fact. In this

regard, Burdette has merely repeated her objection that the demise of the company's *resistor* division is insufficient cause for her dismissal from the *current limiter* operation. Plainly, however, the fortunes of the resistor division—which accounted for over 90% of Mepco's business—bore heavily upon all employees, and there is no requirement that a company make its cutbacks only in the most troubled division. Indeed, to find such a requirement would amount to an impermissible judicial tampering with the "legitimate exercise of managerial discretion." *See Pugh, supra.*

Both federal and state decisions have recognized that adverse economic circumstances can constitute good cause for employee layoffs. *See Gianaculas v. Trans World Airlines, Inc.,* 761 F.2d 1391, 1395 (9th Cir.1985); *Clutterham, supra.* The grant of summary judgment in favor of a corporate employer was recently upheld by the California Court of Appeal in *Malmstrom v. Kaiser Aluminum and Chemical Corporation,* 187 Cal.App.3d 299, 321, 231 Cal.Rptr. 820 (1986). In *Malmstrom,* the court rejected the former employee's claims for breach of an express contract, breach of an implied contract to continue employment until good cause existed for discharge, and tortious breach of the implied covenant of good faith and fair dealing. After citing the *Clutterham* case noted above, the court found that "Kaiser presented undisputed evidence of the depressed condition of its aluminum can business and its business decision to reduce its staff with the result that Malmstrom's services were no longer needed. Kaiser had a 'fair and honest cause or reason, regulated by good faith' to terminate Malmstrom." *Id.*

Similarly, in the instant case, Mepco has presented uncontroverted evidence of deteriorating market conditions. Faced with similar situations in 1982 and later in 1985, Mepco was forced to lay off other employees. Mepco's need for a firm-wide workforce reduction thus constitutes good cause for its decision to lay off Burdette. In the absence of a contrary showing by Burdette, summary judgment may be entered in favor of Mepco on all issues attendant to Burdette's first claim for relief (breach of employment agreement).

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Burdette also alleges that the agreement under which she was employed contained an implied covenant of good faith and fair dealing "by which defendant promised to give full cooperation to plaintiff and her performance under said employment agreement and to refrain from doing any act which would prevent or impede plaintiff from performing all the conditions of the agreement to be performed by her or any act that would prevent or impede plaintiff's enjoyment of the fruits of said agreement." Complaint, pp. 5–6. According to Burdette, Mepco tortiously breached this covenant by its "outrageous, willful and malicious" act of termination. Burdette concludes that Mepco's conduct represented a "wrongful intention of injury" and an "evil motive amounting to malice."

Mepco advances four arguments in opposition to Burdette's claim. First, Mepco states that the California case law, while certainly acknowledging implied covenants of the sort made out by Burdette, nonetheless requires that a claimant establish *longevity of service* before she can invoke the covenant. In *Cleary, supra,* the Court of Appeal found one of two paramount factors in its finding of an implied covenant of good faith and fair dealing to be "longevity of service—18 years of apparently satisfactory performance." 111 Cal.App.3d at 455, 168 Cal.Rptr. 722. (The other factor is the "expressed policy of the employer"—see below.) *See also Pugh, supra,* 116 Cal.App.3d at 328, 171 Cal.Rptr. 917 (where the complainant had been terminated after 32 years). In *DeMinico v. Monarch Wine Co.,* 42 FEP Cases 1342, 1350 (C.D.Cal.1986), Judge Rymer found that, in light of the *Cleary/Pugh* factors noted above, the "plaintiff's seven years of service at Monarch fall short of the necessary longevity recognized in previous cases.... Thus, plaintiff has not raised a triable issue as to breach of the implied covenant of good faith and fair dealing."

Mepco argues that if seven years is too short, then surely Burdette's tenure (four years and four months) is also too short to provide the basis for a claim for breach of the good faith covenant.

Mepco's second argument is that Burdette has failed to make out a showing of the second *Cleary/Pugh* factor. That is, Burdette has not shown that Mepco breached one of its *express policies.* The *Cleary* court relied heavily in its finding of an implied covenant of good faith and fair dealing upon the existence of the employer's express policies for the adjudication of employee disputes. In the instant case, Mepco had no such express policy. The decision to reduce overhead by laying off employees was made *ad hoc* by the managers of the San Diego Mepco plant.

Furthermore, according to Mepco, a claim for breach of the implied covenant requires that a plaintiff establish that the defendant employer engaged in *bad faith* action extraneous to the employment relationship and *intended to frustrate* the enjoyment of contractual rights. *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App. 3d 467, 479, 199 Cal.Rptr. 613 (1984). Burdette has not established such bad faith or intent to frustrate.

Finally, Mepco argues that Burdette's claim for *punitive damages* under an implied contract cannot succeed. Inasmuch as the claim is brought under a tort theory it is time-barred by the one-year statute of limitations of California Code of Civil Procedure § 340(3) (West 1982). And inasmuch as it is brought under a contract theory, it is subject to the traditional reluctance of courts to grant punitive damages in contract actions. *See Grywczynski, supra*, at 67. *See also Crogan v. Metz*, 47 Cal.2d 398, 405, 303 P.2d 1029 (1956).

Upon due consideration, and for the reasons explained by Mepco, the court finds that summary judgment may be entered against Burdette on her second claim for relief (breach of the implied covenant of good faith and fair dealing).

### E. *Fraud and Deceit Claim*

█ Burdette's fourth cause of action is for fraud and deceit under California Civil Code sections 1572 and 1710 (West 1982 and 1985). Burdette alleges that Mepco falsely and fraudulently represented to her that she would be employed until her retirement and that she would be discharged only for good cause. She alleges that these representations, known by Mepco to be false, were made with an intent to deceive.

This claim must fail, both because good cause existed for Burdette's release and because Burdette has not established either that false and fraudulent assurances were made or that they were made with an intent to deceive. In her deposition, Burdette did not indicate that a person connected with Mepco ever said anything to deceive or defraud her. Burdette Dep., p. 137–40. Rather, the allegedly fraudulent representations must have been contained in the company's personnel policies. But in the same deposition counsel for Burdette stipulated that Mepco's personnel policies did *not* include a guarantee of permanent or indefinite employment. Therefore, there is no basis for Burdette's allegations of fraud, and summary judgment may be entered on the fourth claim for relief.

### F. *Negligent Misrepresentation Claim*

█ Burdette's final claim for relief alleges negligent misrepresentation. According to the complaint, Mepco negligently represented to Burdette that she would not be terminated absent good cause, even though Mepco knew that it was retaining the right to terminate Burdette at will. Furthermore, Burdette "was terminated on an arbitrary and capricious basis and because of her age, even though her work performance was satisfactory." Complaint, p. 11.

Once again, the evidence fails to support Burdette's claim. On one hand, the evidence of misrepresentation is thin. Burdette has not identified any direct and false communication between herself and Mepco's managers. Instead, she premises her claim upon the uncertain assurances of firm policies and her supervisors' course of conduct. It is doubtful that a negligent misrepresentation claim can be sustained where the existence of the representations themselves is so unlikely.

On the other hand, even assuming that the alleged representations were made, Mepco has made out a showing of good cause for Burdette's discharge. As discussed above, the firm faced a severe drop-off in orders and was compelled to reduce its workforce by some twenty percent. Burdette, it seems, merely fell victim to the sometimes harsh realities of the fickle electronics industry. Summary judgment is thus warranted on Burdette's claim for relief for negligent misrepresentation.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing and for the reasons set forth above, the court hereby grants ·the motion of Mepco/Electra, Inc. for summary judgment as to all five claims for relief presented by plaintiff Garnet Burdette.