56 F.3d 72
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Camellia A. MULLINS, Plaintiff-Appellant,
v.
CAMPBELL SOUP CO., and Chester Powell, Defendants-Appellees.
 No. 93-56492.
United States Court of Appeals, Ninth Circuit.
 Submitted April 3, 1995.*
Decided May 18, 1995.
 
 1
 Before: D.W. NELSON, and CANBY, Circuit Judges; TANNER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Camellia Mullins, appearing pro se, appeals the district court's grant of summary judgment dismissing Mullins' claims for tortious discipline and sexual harassment under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code Secs. 12900 et. seq., and various state law claims. We have jurisdiction pursuant to 28 U.S.C. Sec.1291, and we AFFIRM in part, REVERSE in part, and REMAND for trial.
 
 BACKGROUND FACTS
 
 4
 Plaintiff was initially hired by Campbell Soup Co. in February 1988 as an Assistant Deli Manager in its Institutional Food Services Division in Denver, Colorado. Chester Powell was the National Sales Manager of the Deli-Bakery division at Campbell at the time. Powell reported to John Riley, then Director of Sales and Marketing for Deli/Bakery. Mullins moved to California when she was promoted to Western Regional Sales Manager for the Deli/Bakery division in August, 1989, and Powell became Mullins' supervisor. Mullins alleges that Powell sexually harassed her on several occasions. Powell denies her accusations.
 
 
 5
 According to Mullins, the following incidents of harassment occurred: In December 1987, while being recruited for employment with Campbell Co., Mullins attended a business dinner with the Western Regional Manager of Foods, Mike Wyatt, who supported her application for employment with the company. During dinner, Power asked her why Wyatt was so "hot" to hire her. Mullins assumed this was an indirect accusation that she and Wyatt were having a sexual relationship.
 
 
 6
 In September 1988, after she was hired, Powell placed his hand on her leg at a business dinner in Las Vegas, Nevada. In July 1989, Powell became angry because she would not "party" with him at the end of the business day. Mullins interpreted Powell's comment as an implied request for sexual favors.
 
 
 7
 In January 1990, following an after-hours drinking session, while driving Mullins back to her hotel, Powell suggested that the two of them share a hotel room and perhaps "cuddle."
 
 
 8
 Mullins also alleges that during the months following her rejection of Powell, Powell repeatedly refused to meet with Mullins or provide her with the necessary training, guidance or supervision to perform her job. Mullins claims that Powell was frequently verbally abusive to her and on at least one occasion, referred to her as a "fucking bitch."
 
 
 9
 On June 6, 1990, Powell met with Mullins and showed her a written performance appraisal prepared by him indicating poor performance. Performance ratings were evaluated on a scale of 1-6, with 6 being the highest. Mullins was rated at 2-3. This review was based on the prior 12 months. Mullins claims that during that same 12 months, she had received a 92% salary bonus out of a possible 100, and a previous mid-year performance review ranking her at a level 5.
 
 
 10
 Following the alleged acts of harassment, Mullins took a one-year medical leave of absence commencing on June 22, 1990, shortly after receiving the negative performance appraisal. Mullins filed a FEHA complaint on February 6, 1991. On June 27, 1991, Mullins was terminated pursuant to the company's one-year medical leave of absence policy. Mullins then filed this action, alleging tortious discipline and sexual harassment in violation of Cal. Gov't Code Sec. 12900 and Sec.12921; breach of an implied contract of employment; breach of the covenant of good faith and fair dealing; intentional infliction of emotional distress; and assault and battery. The district court granted summary judgment in favor of Campbell Soup Company and Chester Powell. This appeal followed.
 
 ANALYSIS
 A. Statute of Limitations
 
 11
 At the outset, Appellees claim that Mullins' first cause of action for tortious discipline and sexual harassment in violation of public policy is time-barred. A claim for wrongful discipline in violation of public policy is governed by a one-year statute of limitations. Cal. Civ. Proc. Code Sec.340(3); See Funk v. Sperry Corp., 842 F.2d 1129, 1133 (9th Cir. 1988). Mullins argues that because Cal. Gov't Code Sec.12960 allows one year from the last incident of harassment or discrimination in which to file a complaint with the DFEH, her action was timely filed.
 
 
 12
 Compliance with the administrative procedures of the FEHA is a prerequisite to bringing a private civil suit for discrimination under California law. Grywczynski v. Shasta Beverages, Inc., 606 F. Supp. 61, 65 (N.D. Cal. 1984). Cal. Gov't Code Sec.12965 requires the plaintiff to file an administrative complaint within one year of the act of discrimination. Id. Mullins alleges that Powell's harassment of her continued into June, 1990, when he referred to her as a "fucking bitch" and gave her a negative performance evaluation.[1]
 
 
 13
 In February 1991, within the one year limitations period, Mullins filed a complaint with DFEH alleging sexual harassment and sex discrimination. Thus, Mullins' claim is not time-barred.
 
 
 14
 Appellees also claim that Mullins failed to exhaust her administrative remedies with respect to a statutory claim for retaliatory termination because she did not include that claim in the original complaint with the Department of Fair Employment and Housing (DFEH).
 
 
 15
 Mullins' claim for retaliatory termination is not barred by Sec.12960 even though it was not expressly included in her original DFEH complaint. When "an investigation of the charges made in the [FEHA complaint] would have revealed the basis for that claim," a claim is not subject to dismissal for failure to exhaust remedies. See Serpe v. Four-Phase Systems, Inc., 718 F.2d 935, 936-37 (9th Cir. 1983). Here, the DFEH was put on notice regarding Mullins retaliatory discharge claim because an investigation of the charges made in the [FEHA complaint] would have revealed the basis for that claim. Id. at 936-37. Plaintiff's retaliation claim is not time barred.
 
 B. Sexual Harassment Claims
 
 16
 Even if not time-barred, Appellees argue, Mullins' claim of sexual harassment and tortious discipline is unsupported by sufficient evidence.
 
 
 17
 We review a district court's grant of summary judgment de novo. Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991). We must determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact, and whether the district court correctly applied the substantive law. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994).
 
 
 18
 The law recognizes two types of sexual harassment: quid pro quo, and "hostile work environment" harassment. Meritor Savings Bank v. Vinson, 477 U.S. 57, 62 (1986); Nichols v. Frank, 42 F.3d 503, 508-09 (9th Cir. 1994). The district court determined that there was no triable issue of fact remaining regarding quid pro quo or hostile work environment harassment.
 
 1. Quid pro quo Harassment
 
 19
 Quid pro quo sexual harassment occurs when submission to sexual conduct is made a condition of employment benefits or a requirement to avoid adverse job consequences. Nichols, 42 F.3d at 509; Fisher v. San Pedro Peninsula Hosp., 262 Cal. Rptr. 842, 851 (Ct. App. 1989).
 
 
 20
 In this instance, there is a genuine issue of material fact as to whether there was quid pro quo sexual harassment. The record includes testimony that Bill Caskey, vice president of sales, told Mullins, "[I]f you don't please Chet ... you will be fired." [ER 3-59]. When Mullins responded by showing Powell's negative performance review to Caskey and attempting to criticize it, Caskey said, "I didn't come here to discuss that with you. I came here to tell you, in no uncertain terms, that if you don't please Chet, that you are fired." [ER 3-60].
 
 
 21
 Although this exchange could be read in several ways, a reasonable juror could conclude that Mullins was expected to submit to Powell's advances if she expected to remain employed. This interpretation is particularly plausible in light of the evidence that Powell's treatment and evaluations of Mullins became negative and hostile during the period after she rebuffed his advances, and that he encouraged her to resign. [ER 3-55]. Thus, we reverse the district court's grant of summary judgment on the quid pro quo harassment claim.
 
 2. Hostile Environment Harassment
 
 22
 To prevail on this claim, Mullins must show that sexual harassment in the workplace was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.[2]
 
 
 23
 Campbell contends that Plaintiff's claim must fail because, to the extent that any sexual harassment existed, it was not sufficiently pervasive, and Mullins failed to notify Powell's superiors of the harassment.[3]
 
 
 24
 Whether the conduct complained of was sufficiently pervasive to create a hostile work environment is determined by the totality of the circumstances. Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 371 (1993); Fisher, 262 Cal. Rptr. at 852.
 
 
 25
 The factors which the court may consider in evaluating the totality of the circumstances are (1) the nature of the unwelcome sexual acts or works; (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurred; and (4) the context in which the harassing activity occurred. Fisher, 262 Cal. Rptr. at 852.
 
 
 26
 The courts have held that occasional, sporadic or isolated incidents are not actionable. The plaintiff must show a concerted pattern of harassment of a repeated, routine or generalized nature. Id.[4]
 
 
 27
 Mullins alleges four specific instances of sexual harassment in the form of verbal comments and physical sexual touching by Powell. However, as the district judge recognized, number alone is not determinative. All of the acts of harassment occurred within a two-year period, and within the context of Plaintiff's employment with Campbell Soup Co.[5] During this time, Campbell was beginning a new job in a position of responsibility, but without the training and support she was promised. Assuming Mullins' contentions are true, her rejection of Powell's advances led to his refusal to give her the support and training she needed to effectively do her job. This, in turn, led to the negative performance appraisal.
 
 
 28
 The Supreme Court has held that conduct, to create an abusive work environment, need not seriously affect an employee's psychological well-being. Harris, 114 S.Ct. at 370-71. While psychological injury is not required, the harassment did cause Mullins to seek out psychological therapy and ultimately a medical leave of absence. There is a genuine factual dispute as to whether a reasonable woman in Mullins' position would find her supervisor's conduct "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991). The district court erred in granting summary judgment on Plaintiff's environmental sexual harassment claim.
 
 C. Retaliation
 
 29
 Mullins charges that her rejection of Powell's advances resulted in a negative performance appraisal, and her ultimate termination. To prove a prima facie case of unlawful retaliation, Mullins must establish (1) that she engaged in a protected activity; (2) that adverse employment action was taken, and (3) that a causal link exists between the two events. Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984); Flait v. North American Watch Corp., 4 Cal. Rptr. 2d 522, 528 (Ct. App. 1992).
 
 
 30
 The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its conduct; and the plaintiff has the ultimate burden to rebut by showing that the profferred explanation is a mere pretext for the illegal conduct. Wrighten, 726 F.2d at 1354. Lawsuits claiming retaliation under FEHA are "analagous to federal Title VII claims, and are evaluated under federal law interpreting Title VII cases." Flait, 4 Cal. Rptr. 2d at 528-29.
 
 
 31
 The Supreme Court has recently held that in establishing pretext, a plaintiff must show that the profferred reason is not only false, but that the alleged discrimination is in fact the real reason behind the adverse conduct. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993).
 
 
 32
 While Mullins has made out a prima facie case, she has presented no evidence to rebut Campbell's strong showing of a non-retaliatory motive. It is undisputed that Campbell's policy was to allow only a 12-month leave of absence. Mullins was terminated five days after she was to return to work. Mullins has failed to present triable issues of fact sufficient to support her retaliation claim. We therefore affirm the summary judgment on Mullins' retaliatory discharge claim.
 
 D. Breach of Contract and Covenant Claims
 
 33
 Campbell argues that summary judgment is appropriate on Plaintiff's claims for breach of contract and the covenant of good faith and fair dealing, claiming that Mullins has failed to establish that her employment was not terminable "at will." Alternatively, Campbell argues that Mullins has failed to show that Campbell's proffered reasons for her termination were a pretext for unlawful discrimination.
 
 
 34
 Under California law, an employment contract for an indefinite term is presumed terminable at will by either party, absent an express or implied employment agreement. Foley v. Interactive Data Corp., 254 Cal. Rptr. 211, 223 (1988). The employee challenging a termination has the burden of establishing that an exception to the at-will doctrine applies. See Cal. Lab. Code Sec.2922; Burton v. Security Pacific Nat'l Bank, 243 Cal. Rptr. 277, 280 (Ct. App. 1988).
 
 
 35
 To survive summary judgment, the plaintiff must present facts that will take the case out of the California statutory presumption of at-will employment. Mullins must present facts showing an express or implied contract to terminate only for good cause, or facts showing violation of a strong public policy. Burton, 243 Cal. Rptr. at 280.
 
 
 36
 Plaintiff's only evidence of an implied in fact contract consists of her testimony that she was told by Mike Wyatt that Campbell Soup Company was a "family place," from which she inferred that she was guaranteed lifetime employment. Mullins concedes that she had no written employment contract with Campbell, and she has not presented facts sufficient to establish an implied-in-fact employment contract.
 
 
 37
 A breach of covenant claim arises from an enforceable contract. Where no employment contract exists, there is no tort remedy for breach of the implied covenant of good faith and fair dealing. Foley, 254 Cal. Rptr. at 234.
 
 
 38
 Campbell Soup articulated a legitimate, nondiscriminatory reason for Mullins' termination, which Mullins has been unable to rebut. Because Mullins has failed to demonstrate that her employment was other than at will, the district court properly granted summary judgment on these claims.
 
 
 39
 E. Intentional Infliction of Emotional Distress
 
 
 40
 Campbell contends that Cal. Civ. Proc. Code Sec.340(3) bars Mullins' claim for emotional distress. Alternatively, Campbell argues that Mullins' claim for emotional distress is preempted by the exclusive remedy provision of the California Worker's Compensation Act, Cal. Lab. Code Secs. 3600 et. seq. In opposition, Mullins cites Livitsanos v. Superior Court, 7 Cal. Rptr. 2d 808 (1992), for the proposition that the exclusivity clause of the Workmen's Compensation Act does not apply to this case.
 
 
 41
 Claims for emotional distress are subject to the one year statute of limitations for personal injury torts. Cal. Civ. Proc. Code Sec. 340(3). This statute begins to run as soon as the injury reaches the stage of "severe emotional distress." Kiseskey v. Carpenters' Trust, 192 Cal. Rptr. 492, 496 (Ct. App. 1983). The district court found that Plaintiff's emotional distress had become "severe" by the time she took a medical leave of absence in June 1990. Therefore, the statute of limitations had run before Plaintiff filed her complaint in September, 1991. As Mullins' emotional distress claim is time-barred, we need not decide whether Plaintiff's claim is preempted by Cal. Lab. Code Sec.3600 et. seq.
 
 F. Assault and Battery
 
 42
 Appellees claim that Mullins' assault and battery claims are also time-barred. The statute of limitations for assault and battery is one year. Cal. Civ. Proc. Code Sec.340(3). The most recent alleged incident of assault and battery occurred in January 1990, while the instant action was filed in September 1991, beyond the one-year limitations period.
 
 
 43
 Mullins argues that the "right to sue" letter she received from DFEH provided her with one year in which to file suit. However, FEHA is a statutory scheme unrelated to the common-law tort of assault and battery. The additional time limitation indicated in Plaintiff's right to sue letter does not relieve Plaintiff of her duty to conform to other applicable statutes of limitation. Summary judgment on these claims is appropriate.
 
 CONCLUSION
 
 44
 We AFFIRM the district court's summary judgment on Plaintiff's state-law claims, however, we find that a genuine issue of material fact exists as to whether a reasonable juror would find quid pro quo or hostile work environment harassment under the facts of this case. Accordingly, we REVERSE the district court's grant of summary judgment on the hostile work environment and quid pro quo sexual harassment claims and REMAND for trial on those claims.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir. R. 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court's order on summary judgment did not refer to the sexually explicit name-calling, however, Plaintiff clearly made this allegation in her deposition
 
 
 [2]
 A prima facie case of hostile work environment requires a showing that: plaintiff (1) belonged to a protected group; (2) was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment, and (5) respondeat superior. Fisher, 262 Cal. Rptr. at 851. Only the fourth factor is disputed by Defendants
 
 
 [3]
 Campbell argues that it had neither actual nor constructive notice of any hostile work environment sexual harassment, and that it cannot be liable for any harassment of Mullins
 Although the Supreme Court has rejected the notion that employers are always automatically liable for sexual harassment by their supervisors, Meritor, 477 U.S. at 72, "absence of notice to an employer does not necessarily insulate that employer from liability." Id.
 Under the FEHA, an employer is "strictly liable for the harassing conduct of its agents and supervisors." Fisher, 262 Cal. Rptr. 842 at 851, n. 6. Therefore, lack of notice to the employer is not necessarily fatal.
 
 
 [4]
 Because the 1987 incident occurred prior to creation of an employer-employee relationship between Campbell Soup and Mullins, it cannot be the basis for a sexual harassment claim as a matter of law. See Capitol City Foods, Inc. v. Superior Court, 7 Cal. Rptr. 2d 418, 420-22 (1992)
 
 
 [5]
 The 1987 incident is not included in this reference