[S. F. No. 19096.   In Bank.   Nov. 30, 1956.]

HAZEL L. CROGAN, Respondent, v. BERT METZ et al., Appellants.

Byron Arnold, George I. Hoffman, Lansburgh, Hoffman, Arnold & Schiller and Lansburgh, Hoffman & Schiller for Appellants Bert Metz and Vivian Metz.

Theodore M. Monell for Appellant Letsinger.

Ralph Wertheimer for Respondent.

Chandler P. Ward, as Amicus Curiae on behalf of Respondent.

SHENK, J.—Separate appeals have been taken by the defendants from a judgment for the plaintiff in an action to recover secret profits in a real estate transaction.

The defendants Bert Metz and Dewey Letsinger and another real estate broker, William W. Mogan, shared office space in San Francisco but each carried on an independent real estate business. There is substantial evidence that, beginning in the early part of 1951, they engaged in the following activities.

The defendant Letsinger represented one Desiano who owned income property on Scott Street in San Francisco which he wished to sell for $165,000 net to himself, less a $5,000 bonus to Letsinger if he could arrange for the sale within a specified time. Letsinger's associate Mogan represented one Rinas who owned property on Bay Street which he wished to exchange for more valuable income property. Rinas had been unsuccessful in attempts to sell the property for $110,000 and even $100,000, and for purposes of exchange valued the property at $100,000. Accordingly Letsinger and Mogan attempted to arrange for an exchange of the Scott Street for the Bay Street property and $60,000 in cash but Desiano was not interested in acquiring additional property.

It became obvious that in order for Letsinger and Mogan to consummate negotiations on the terms required by their principals and to provide commissions for themselves it would be necessary for them to sell the Bay Street property at a price in excess of the $100,000 valuation placed on it by its owner, Rinas. Acting together they advertised it for $115,000. Desiano knew nothing of these activities. Rinas knew of the

advertised price for his property but believed that no one would accept at that figure and that if a buyer was found that he, Rinas, would share in the increase over his named price.

Meanwhile the defendant Bert Metz learned of the pending transactions from his associates. He advised the plaintiff, a widow whom he had represented for a number of years, that he had an advantageous deal for her whereby she could acquire a valuable property in excellent condition for $115,000; that she could use property she owned on Fulton Street valued at $50,000 in partial payment on a trade, and that she probably could secure a loan upon the execution of a deed of trust on the Bay Street property for the difference. He assured the plaintiff that the owners were asking $115,000 and that they "wouldn't budge" from that price. She entered into an agreement with Metz wherein he was authorized to arrange for the exchange of her property according to the terms he suggested to her. No explanation was made to her by Metz that a multiparty transaction was involved, nor that a price of $15,000 over and above Rinas' demands had been set by the brokers so that they could recover their commissions from the fund which would be realized upon the consummation of all the transactions involved. The plaintiff agreed to execute a second deed of trust in favor of Metz in payment of his commission for services rendered to her.

The exchange of properties suggested by the plaintiff's offer of exchange would not, of course, supply the necessary funds to consummate the transaction contemplated. Accordingly, each of the three brokers participated in obtaining bids for the plaintiff's property and a purchaser, Mrs. Lukes, was found who was willing to pay $49,500 for it. On June 28, 1951, the transactions were closed by means of five grant deeds: The Scott Street property from Desiano to Rinas, the Bay Street property from Rinas to Desiano and from Desiano to the plaintiff, and the Fulton Street property from the plaintiff to Desiano and from Desiano to Lukes. In addition the following transfers of funds were made: Mrs. Lukes paid into escrow $49,500, the plaintiff paid $65,000, Rinas paid $60,000, and Desiano received $160,000 less minor costs and fees. Commissions paid through the title company to the three brokers totaled $11,984.50, including Letsinger's bonus. In addition to other commissions received by Metz the plaintiff executed her note to him, secured by a second deed of trust on

the Bay Street property, in the sum of $3,000, $2,500 of which represented commissions. Certain other costs and fees absorbed the balance of the fund placed in the brokers' hands.

Letsinger and Metz testified that the three brokers had acted "in concert" and "as a team" in negotiating the "three cornered deal," and that they had cooperated in showing and obtaining buyers for the property of Rinas and of the plaintiff. Each knew that the price the plaintiff paid for the Bay Street property had not been set by the owner, Rinas. The record shows that each of the brokers was fully aware of the nature of all transactions.

Shortly after the sale was consummated the plaintiff learned that Rinas had been asking only $100,000 for his property. She thereupon commenced this action for $15,000 and punitive damages against Metz, joining Letsinger, Mogan and Mrs. Vivian Metz as codefendants. The amended complaint alleges facts based on three different legal theories. Count I alleges fraud and the making of false representations to the plaintiff by the defendant Metz in his personal capacity and as agent of each of the other defendants, for the purpose of fraudulently inducing the plaintiff to purchase certain property at a price of $15,000 in excess of the owner's willingness to accept. Count II incorporates allegations of Count I as to the status of the parties and ownership of the properties involved, including an allegation that the defendant Metz acted for himself, as agent for the plaintiff, and as agent for each of the other defendants. It then alleges that Metz, in effecting the exchange of the properties involved "retained, and does now retain, monies, property and secret profits received by him for the use of and belonging to plaintiff herein in the sum of Fifteen Thousand ($15,000.00) Dollars, no part of which has been paid to plaintiff, and the same is now due, owing and unpaid." Count III incorporating all of the allegations of Count I, alleges that the three brokers conspired to defraud the plaintiff in the sum of $15,000. Punitive damages were prayed for as to Counts I and III. The action was tried by a court sitting without a jury. The defendant Mogan died prior to the trial and no further proceedings were taken as to his alleged part in the transaction.

The court made only two findings, namely: "I. The allegations set forth in plaintiff's amended complaint on file herein are TRUE. II. The defendants and each of them conspired to obtain from plaintiff, and did assist each other in obtaining, by means of the fraudulent conduct more fully set forth in

the findings of fact herein and in violation of the fiduciary duty owed by defendant Bert Metz to plaintiff, the sum of $15,000.'' Judgment was entered against the defendants Bert Metz, Vivian Metz and Dewey Letsinger in the sum of $15,000, together with interest at the rate of 7 per cent from June 28, 1951, and in the sum of $2,500 as punitive damages in favor of the plaintiff against the defendants Letsinger and Bert Metz.

From its general finding that the allegations of the amended complaint are true, it is not readily ascertainable upon which of the theories pleaded the court based its judgment. ▮ It is well established that a complaint may plead different theories on which relief is sought with legal propriety. (*Faulkner* v. *California Toll Bridge Authority,* 40 Cal.2d 317, 328 [253 P.2d 659]; *Tanforan* v. *Tanforan,* 173 Cal. 270, 273 [159 P. 709].) It is noted that here each of the counts is based upon the same allegations of fact and that there are no contradictory or antagonistic facts. (*Cf. Faulkner* v. *California Toll Bridge Authority, supra,* 40 Cal.2d 317, 328; *Beatty* v. *Pacific States Sav. & Loan Co.,* 4 Cal.App.2d 692, 696 [41 P.2d 378].) ▮ If the plaintiff makes no election or is not otherwise estopped (*Steiner* v. *Rowley,* 35 Cal.2d 713, 720 [221 P.2d 9]) the election as to which cause of action is sustained is, after the taking of all the evidence, a matter for the judge or the jury. (*Tanforan* v. *Tanforan, supra,* 173 Cal. 270, 274.) ▮ Where an appeal is taken from such a judgment the reviewing court has the power to disregard particular theories and findings and to affirm the judgment on a theory which is supported by the finding and evidence in order that causes may be disposed of by a single appeal and without further proceedings in the trial court. (*Wallace Ranch Water Co.* v. *Foothill Ditch Co.,* 5 Cal.2d 103, 118 [59 P.2d 929]; *Baird* v. *Ocequeda,* 8 Cal.2d 700, 703 [67 P.2d 1055]; *cf. Block* v. *D. W. Nicholson Corp.,* 77 Cal.App.2d 739, 747 [176 P.2d 739].) The main issue on this appeal, therefore, is whether the findings and the judgment may be sustained by the pleadings and proof as to any of the causes of action stated.

It is plain that by its general finding that the allegations of the complaint were true the intent of the court was to find the material facts against the defendants and in favor of the plaintiff. ▮ As usual in actions of this sort the evidence is conflicting. However, as so often stated, all intendments are in favor of the judgment and this court must accept as

true the evidence which tends to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been drawn by the trial court. The test, of course, is not whether there is a substantial conflict in the evidence but whether there is substantial evidence in favor of the respondent. (*Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384]; *Estate of Teed*, 112 Cal. App.2d 638, 644 [247 P.2d 54]; Witkin, Procedure, p. 2250.)

It is claimed that the judgment must be reversed for the reason that there is no evidence as to the actual damages sustained by the plaintiff. Section 3343 of the Civil Code provides that one "defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received . . .." The trial court refused to permit either party to introduce evidence on questions of value and this refusal is claimed to constitute prejudicial error. (See *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 763 [192 P.2d 935].) While it may be argued with some reason that an application of the Bagdasarian case would require a reversal of the judgment on the theory of recovery stated in Counts I and III, it is not necessary to decide that question as the judgment may be affirmed on the theory pleaded in Count II.

Count II is in the nature of a common count for money had and received. By such a pleading the principal waives the tort of the agent and asserts a right to recover any secret profits made by him out of his agency. Her right to do this is well recognized. (*Philpott* v. *Superior Court*, 1 Cal.2d 512, 518 et seq. [36 P.2d 635, 95 A.L.R. 990]; *McCall* v. *Superior Court*, 1 Cal.2d 527, 530-531 [36 P.2d 642, 95 A.L.R. 1019].)

In *Savage* v. *Mayer*, 33 Cal.2d 548, it was stated at page 551 [203 P.2d 9] that an agent "is not permitted to make any secret profit out of the subject of his agency. [Citations.] All benefits and advantages acquired by the agent as an outgrowth of the agency, exclusive of the agent's agreed compensation, are deemed to have been acquired for the benefit of the principal, and the principal is entitled to recover such benefits in an appropriate action." As to the applicability of section 3343 of the Civil Code it was there stated: "It follows that the principal's right to recover does not depend upon any deceit of the agent, but is based upon the duties incident to the agency relationship and upon the fact that all

profits resulting from that relationship belong to the principal. Thus section 3343 of the Civil Code, which provides the measure of damages in a suit based upon fraud in the sale or exchange of property, does not operate to limit a principal's recovery to those damages even though the profits may have been acquired through fraudulent representations to him . . . see also recent cases which allowed full recovery of secret profits without discussing section 3343: *Kinert* v. *Wright*, 81 Cal.App.2d 919 [185 P.2d 364]; *Thompson* v. *Stoakes*, 46 Cal.App.2d 285 [115 P.2d 830]; *Schwarting* v. *Artel*, 40 Cal.App.2d 433 [105 P.2d 380].''

Here the whole transaction was tainted by a breach of duty and the entire $15,000 may be recovered as secret profits from those who jointly received it while acting in concert in a fiduciary relationship. A clear showing of agency on the part of Metz and the defendant Letsinger is reflected by the record. It is not necessary to restate all the evidence in support of the finding on this material allegation. However, no evidence of agency is shown insofar as the defendant Vivian Metz is concerned. Her sole connection with the transaction appears to be that she is a named promisee in the note and the named beneficiary in the deed of trust securing the note given by the plaintiff in payment of commissions to Metz on the sale of the Fulton Street property.

The cause of action stated in Count II is supported by the general finding and the judgment for compensatory damages, but does not entitle the plaintiff to punitive damages. Such an award may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent. (Civ. Code, § 3294; *Brewer* v. *Second Baptist Church*, 32 Cal.2d 791, 801 [197 P.2d 713]; *Chelini* v. *Nieri*, 32 Cal.2d 480, 486-487 [196 P.2d 915]; *Mother Cobb's Chicken Turnovers, Inc.* v. *Fox*, 10 Cal.2d 203, 205 [73 P.2d 1185].) Where a trial court erroneously awards both compensatory and exemplary damages for a breach of contract a reviewing court may, instead of reversing the entire judgment, make an order of modification striking that portion relating to punitive damages and affirm the judgment as so modified. (*Chelini* v. *Nieri, supra,* 32 Cal.2d 480, 488; *Wolfsen* v. *Hathaway*, 32 Cal.2d 632, 651 [198 P.2d 1]; 14 Cal.Jur.2d p. 828.)

It is therefore ordered that the judgment against the defendant Vivian Metz be and the same is hereby reversed; that

as to the defendants Dewey Letsinger and Bert Metz the judgment is modified by striking therefrom that portion in which the plaintiff is awarded $2,500 as punitive damages, and as so modified the judgment as to them is affirmed, no party to recover costs on appeal.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

The petitions of Bert Metz and Dewey Letsinger for a rehearing were denied December 24, 1956.