Filed 9/12/13  In re Emma V. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re EMMA V., a Person Coming Under the Juvenile Court Law. | B245807 |
| _____<br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER R.,<br><br>    Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No. CK74781) |

        APPEAL from an order of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee.  Affirmed.

        Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

        John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel.

Jennifer R. (mother) appeals from an order terminating parental rights to Emma V. under section 366.26 of the Welfare and Institutions Code.[1] She contends substantial evidence does not support the findings the Indian Child Welfare Act of 1978 (the ICWA) (92 Stat. 3069, 25 U.S.C. §§ 1901-1963) does not apply and Emma was adoptable. We affirm.

## FACTS AND PROCEDURAL HISTORY

Emma was born in 2008 to mother and M.V. (father).[2] Mother had a history of substance abuse, was a current abuser of alcohol, and had mental and emotional problems.[3] Father had a history of substance abuse. Emma was a prior court dependent from September 2008 to December 2009. She was reunited with mother.

Emma was detained on March 14, 2011, when mother allowed a stranger to drive her away, and a section 300 petition was filed by the Department of Children and Family Services ("Department").

On May 16, 2011, Emma was declared a dependent of the court based on sustained allegations under section 300, subdivision (b), as to mother, that the child was at substantial risk of serious physical harm due to mother's failure to adequately protect her, willful or negligent failure to supervise her adequately, and inability to provide regular care due to mental illness and substance abuse. The court found the ICWA did not apply. Custody was taken from parents. The Department was ordered to provide reunification services.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The dependency court found father to be the children's presumed father.

[3] Mother was a former dependent child of the court. She was removed from maternal grandparents at age seven, reunited with maternal grandmother, and removed again and placed in foster care at age 16, where she remained until she emancipated. Emma was born when mother was 16 years old.

Parents failed to reunify with Emma. On November 28, 2011, the dependency court terminated reunification services and set the matter for a section 366.26 hearing on March 26, 2012.

On October 16, 2012, after finding by clear and convincing evidence that it is likely Emma will be adopted, parental rights were terminated.

## DISCUSSION

1. *Substantial evidence supports the ICWA finding.*

Mother contends substantial evidence does not support the finding the ICWA does not apply, in that the Department failed to investigate the maternal relatives and thus provided inadequate notice to the tribes. We disagree with the contention.

a. *Standard of review.*

We review the dependency court's determination's "whether proper notice was given under ICWA and whether ICWA applies to the proceedings" for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.) In determining whether substantial evidence supports the factual findings, "all intendments are in favor of the judgment and [we] must accept as true the evidence which tends to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been drawn by the trial court." (*Crogan v. Metz* (1956) 47 Cal.2d 398, 403-404.)

b. *Relevant procedural facts.*

In Emma's 2008-2009 dependency case, the dependency court found the ICWA did not apply.

In the current dependency case, mother stated that maternal grandfather Anthony James R. was a Cherokee. On April 7, 2011, the court ordered the Department to give notice of the proceedings to the Cherokee tribes.

After the April 7 hearing, the social worker interviewed mother and sent notice of the proceedings to the three Cherokee tribes, Bureau of Indian Affairs, and Secretary of the Interior, based on information obtained from mother. The notice stated, "[e]nclosed information was obtained from the mother on 04/11/2011." Mother stated she, Emma,

3

and maternal grandmother were not tribal members. She did not know maternal grandmother's and maternal grandfather's current or former addresses. The notice to the tribes identified mother, father, maternal grandmother, and maternal grandfather. The notice stated Anthony James R. was born was in July 1968 and was incarcerated, his tribe was Cherokee, and his tribal membership was unknown. He and mother shared the same last name. He was mistakenly listed in the box for the paternal grandmother, rather than in the box for maternal grandfather.

The United Keetoowah Band of Cherokee Indians replied that Emma was not a descendant of anyone on the Keetoowah Roll. Stating it searched its records for, among others, "maternal grandfather" Anthony James R., the Cherokee Nation replied that Emma was not an Indian child in relationship to the Cherokee Nation. The Eastern Band of Cherokee Indians received the notice but did not respond.

On May 16, 2011, the court reviewed the answers received from the tribes and stated: "[t]he only answers we received from the tribe so far is that the child is not enrolled or eligible and so this is a non-ICWA case at this point. If there's any further information, I will change my orders. But, as of today, this is a non-ICWA case."

c. *The ICWA.*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) The substantive provisions of the ICWA apply to the minor's placement in adoption and foster care and to other hearings, such as termination of parental rights, which affect the minor's status." (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1266.)

An Indian child is defined in the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903, subd. (4).) "A determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, . . . shall be conclusive." (§ 224.3, subd. (e)(1).) When the dependency court knows or has reason to know that an Indian

4

child is involved, notice of the dependency proceeding must be given to the parents and tribe. (25 U.S.C. § 1912, subd. (a).) A social worker having reason to know the child is or may be an Indian child must interview, among others, the child's parents and grandparents. (Cal. Rules of Court, rule 5.481(a)(4).)

### d. *Substantial evidence.*

The contention the maternal relatives were not investigated is easily rejected. The notice stated that mother was interviewed about her Indian heritage and the information she provided was included in the notice. As she did not know any current or former address of maternal grandparents or the identity of other maternal ancestors, and no maternal relatives appeared in the proceedings or were involved in the case, there were no other maternal relatives for the Department to interview. This is substantial evidence the Department investigated Emma's possible Indian heritage and provided all the notice available.

To the extent mother contends notice to the tribes was inadequate because maternal grandfather was erroneously listed as "child's paternal grandmother," we disagree with the contention. The notice contained his male first name, his year of birth, and the fact he and mother shared the same last name. This identifying information made it clear he was the maternal grandfather. The Cherokee Nation's response indicates it was not misled. None of the tribes determined Emma was an Indian child. Moreover, there was a finding in Emma's previous dependency case that the ICWA did not apply.

We conclude substantial evidence supports the findings notice was adequate and the ICWA does not apply.

### 2. *Substantial evidence supports the adoptability finding.*

Mother contends substantial evidence does not support the finding Emma was likely to be adopted. We disagree with the contention.

### a. *Standard of review.*

Parental rights may be terminated and the child ordered placed for adoption if the court determines, by clear and convincing evidence, it is likely the child will be adopted. (§ 366.26, subd. (c)(1).) " 'The issue of adoptability posed in a section 366.26

hearing focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.] Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent "waiting in the wings." [Citations.]' [Citation.]" (*In re Lukas B*. (2000) 79 Cal.App.4th 1145, 1154.) On appeal, we review the adoptability determination for substantial evidence. (*Ibid.*) In determining whether an order is supported by substantial evidence, "we look to see if substantial evidence, contradicted or uncontradicted, supports [it]. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

    b. *Relevant facts.*

  Emma was detained in a foster home in March 2011 until she could be placed in a relative's home. She was placed with paternal aunt Teresa V. in May 2011. Health issues which Teresa developed prevented Teresa from continuing to provide a home for Emma. In December 2011, Emma was replaced in the home of paternal relative Laura S., who loved Emma and wanted to adopt her.[4] Emma did well in Laura's home. In May 2012, Laura concluded that personal issues with her immediate family prevented her from proceeding with the adoption process. The Department planned to contact paternal aunt Veronica V., who knew and wanted to adopt Emma, about placement. At the hearing on May 21, 2012, the court recognized Emma was not in an adoptive home and

---

 **4**  Emma was temporarily placed in a foster home until Laura's home was approved.

another paternal relative wanted to adopt. At the hearing on October 16, 2012, Emma's attorney told the court that Emma was currently in an adoptive home.

In her out-of-home placements, Emma was "friendly and outgoing." She was happy and healthy. She ate and slept well. She responded well to positive reinforcement. She interacted well with her foster parents and other adults but fought with other children for toys and attention. She participated in individual therapy to address her anger issue and to learn to verbalize her feelings. She made progress in therapy. She enjoyed school and spoke happily about school and her teacher.

### c. *Substantial evidence.*

Ample substantial evidence supports the finding Emma was likely to be adopted. She was a physically and emotionally healthy young four-year-old. She had many positive attributes, such as eating and sleeping well, being a happy child, responding well to discipline, and getting along well with adults. Her problematic interaction with other children in the home was being successfully addressed in individual therapy. There was evidence two relative caretakers wanted to make her a permanent family member but their personal circumstances prevented them from adopting her. Emma was in an adoptive home at the time of the hearing.[5] Mother reargues the evidence and asks us to reweigh it. That is not our role. (*In re Matthew S.*, *supra*, 201 Cal.App.3d at p. 321.) The foregoing is substantial evidence supporting the finding Emma was likely to be adopted within a reasonable time.

---

[5] To the extent mother contends Emma was not in an adoptive home at the time of the hearing, we conclude mother mischaracterizes the record. The record indicates that, in May 2012, paternal aunt Veronica wanted Emma placed with her for adoption and the Department planned to pursue this placement. Five months later, Emma's counsel told the court, without contradiction, that Emma was in an adoptive home. It is reasonable to infer from this record that Emma was in an adoptive home at the time of the hearing. In any event, it is not necessary for an adoptive parent to be "waiting in the wings" for the court to conclude a child is likely to be adopted. (*In re Lukas B., supra,* 79 Cal.App.4th at p. 1154.)

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.

8