Filed 6/12/14  In re J.G. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | B252795 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK95349) |
| Plaintiff and Respondent, | |
| v. | |
| K.G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

K.G. (mother) appeals from the juvenile court's orders of October 31, 2013 denying her petition under Welfare and Institutions Code section 388[1] for an order reinstating reunification services for her twin son and daughter and terminating parental rights. She contends: (1) denial of the petition was an abuse of discretion; (2) substantial evidence does not support the finding no exception to termination existed; and (3) the court failed to insure compliance with the Indian Child Welfare Act of 1978 (the ICWA) (92 Stat. 3069, 25 U.S.C. §§ 1901-1963). We affirm.

## STATEMENT OF FACTS AND PROCEDURE

Son and daughter ("children"), born to mother in August 2012,[2] were detained by the Department of Children and Family Services ("Department") at birth, and a section 300 petition was filed, because mother was incarcerated following an arrest for a probation violation and shoplifting.[3] The children were placed in a foster home when they were released from the hospital in September 2012.

On October 10, 2012, the children were declared dependents of the court under section 300, subdivisions (b) and (g), based on sustained allegations that there was a substantial risk they would suffer serious physical harm or illness and the parent was incarcerated and could not arrange for their care, in that mother was incarcerated and failed to make an appropriate plan for their ongoing care and supervision. Custody was taken from mother, reunification services were ordered, mother was ordered to participate in individual counseling, and mother was granted monitored visitation three times per week upon her release from jail.

Mother was released from jail on October 24, 2012, and visitation was arranged for her. Mother missed most of her scheduled visits. She appeared distracted and impatient during visits. She did not want to change the children's diapers.

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]    The court found mother's boyfriend, Ray G. (also known as Ray B.) was an alleged father.

[3]    Mother had a criminal history of convictions, beginning in 2007, for receiving known stolen property and burglary. She previously spent eight months in jail and currently was on probation.

On March 20, 2013, mother was arrested for possession of a controlled substance and being under the influence of a controlled substance. She was released on March 21, 2013.

Mother failed to reunify with the children. On May 10, 2013, the court terminated reunification services and set the matter for a section 366.26 hearing to determine a permanent plan for the children. Mother was granted monitored visits once a week for two hours.

On June 12, 2013, mother entered a six-month, inpatient drug rehabilitation program. On July 2, 2013, she was convicted of possession of a controlled substance and being under the influence of a controlled substance. She was placed on probation, which required her to complete a drug treatment program. She was admonished to remain in her inpatient drug program or be remanded.

Mother attended about half of the weekly visits the court allowed. Daughter was uncomfortable with mother and resisted mother's attempts to interact with her. On occasions, mother was not able to soothe the children or handle their needs without foster mother's prompting or help. The children did not refer to mother as "mom" or "mommy."

The foster parents wanted to adopt the children. In June 2013, their adoptive home study was approved. The children had been living with the foster parents since they were one week old. They were well cared for and thrived. They were bonded to the foster parents.

On October 3, 2013, mother filed a petition under section 388, asking the court to change the May 10, 2013 order that terminated family reunification services and issue an order reinstating reunification services, setting a section 366.22 [18-month review] hearing, and vacating the section 366.26 hearing. Mother alleged circumstances had changed in that she substantially rehabilitated herself and maternal grandmother was recognized to be of Yaqui descent. Mother alleged the change of order was in the best interests of the children in that she had regular visits with the children and there was a bond. The juvenile court set the petition for a hearing on October 31, 2013, the date set

3

for the section 366.26 hearing. Mother testified her criminal case would be dismissed in late January 2014 if she completed her drug program.

On October 31, 2013, after a hearing, the court denied the section 388 petition, terminated parental rights, and ordered a permanent plan of adoption. Concerning denial of the section 388 petition, the court found mother did not have a place for the children to live or a way to obtain a residence for them, had not completed her drug program, did not have her criminal case dismissed, was not in school, and did not have a job. The court stated: "I realize that you're changing. You're turning the corner, but you have not turned that corner. And I've got to make a call based on this situation at this time because these are young children under three. The law only allows six months of services. And if you are not ready to get the children back or substantially complying, then services are cut off and we go to a [section 366.26 hearing] which is what is going on today." The court stated: "I have to make a call for these children now. . . . [¶] . . . I will make the best call I can taking into account the best interests of the children[,] who have been with their caretakers virtually from birth, who are in a loving home, who have attached themselves to these caretakers and it would be upsetting to them to be removed especially if we are not able to get them back to you in a place where they could be as well taken care of. Because we don't know what is going to happen [with you] in the next six months . . . ." "These children of this age deserve permanency quickly so they can grow up in a household that they know is theirs and is not going to be upset in a year or so by a parent that takes [her] time to get things going."

Concerning the determination to terminate parental rights, the court found the children were adoptable and no exception to adoption applied. The court designated the foster parents as the prospective adoptive parents.

**DISCUSSION**

1. *Denial of the section 388 petition was not an abuse of discretion.*

Mother contends denial of her section 388 petition was an abuse of discretion. We conclude the dependency court did not abuse its discretion.

4

Section 388 provides for modification of an order of the juvenile court when the moving party shows there is new evidence or changed circumstances and demonstrates the requested modification is in the child's best interests.[4] (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.*, *supra*, at pp. 318-319.)

If substantial evidence supports the determination, the order is not an abuse of discretion. (*In re Jasmon O.*, *supra*, 8 Cal.4th at pp. 415-416.) In determining whether substantial evidence supports the factual findings, "all intendments are in favor of the judgment and [we] must accept as true the evidence which tends to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been drawn by the trial court." (*Crogan v. Metz* (1956) 47 Cal.2d 398, 403-404.) The party requesting the change of order has the burden of proof. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

Once reunification services are terminated, the focus shifts from reunification to the child's need for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) "[O]ur Supreme Court made it very clear in [*In re Jasmon O., supra,* 8 Cal.4th at pp. 408, 414-422] that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531.) Moreover, time is of the essence, especially to young children; when it comes to securing a stable,

---

[4]     Section 388, subdivision (a)(1) provides in pertinent part that a parent "may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . [¶] . . . [¶] (d) If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

permanent home for children, prolonged uncertainty is not in their best interest. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 674 [" 'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.' [Citation.]"].)  (See § 361.5, subd. (a)(1)(B) [with certain exceptions, parents of children under the age of three years when detained have six months to reunify].)  "Childhood does not wait for the parent to become adequate." (*In re Marilyn H., supra,* at p. 310.)

When reunification services were terminated, mother was using illegal drugs and had a pending criminal case.  Her visitation was sporadic and required to be monitored. She did not fully engage with the children and did not have a parent-child relationship with them.  When the section 388 petition was heard, mother had not completed a drug rehabilitation program and her criminal case was still pending.  Her visitation was sporadic and remained monitored.  Daughter's resistance to engage with mother, the fact the children did not refer to her as their mother, and mother's inability to consistently handle the children's needs without help, indicate mother's relationship with the children had not progressed to the point where she played a parental role.  This is substantial evidence supporting the juvenile court's finding that circumstances had not changed.

Reinstating mother's reunification services would delay permanency for these very young children, whose status was in limbo for 14 months.  It was unknown whether, at the end of a further period of services, mother would be rehabilitated, succeed in getting her pending criminal charges dismissed, develop a parent-child relationship with the children, and be able to provide for them in a stable home.  The children were bonded to their caretakers, in whose home they had lived and thrived their whole lives.  The caretakers were ready to provide permanency for the children.  This is substantial evidence supporting the finding mother's changing circumstances were not such that

6

reinstating reunification services and vacating the order setting a section 366.26 hearing was in the best interests of the children.[5]

Mother reargues the evidence and asks us to reweigh it. This we will not do. (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319.) As substantial evidence supports the findings, denial of the section 388 petition was not an abuse of discretion.

2. *Substantial evidence supports the finding that the exception in section 366.26, subdivision (c)(1)(B)(i), does not apply.*

Mother contends the dependency court abused its discretion in terminating parental rights, because she presented sufficient evidence that the exception to termination in section 366.26, subdivision (c)(1)(B)(i) applied. We disagree with the contention.

We apply the substantial evidence rule to review a challenge to the finding the exception did not apply. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576; compare *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449 [abuse of discretion standard of review].)[6] If supported by substantial evidence, the judgment or finding must be upheld, even though substantial evidence may also exist that would support a contrary judgment and the dependency court might have reached a different conclusion had it determined the facts and weighed credibility differently. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Thus, the pertinent inquiry when a finding on the section 366.26, subdivision (c)(1)(B)(i), exception is challenged is whether substantial evidence supports the finding, not, as

---

[5] There was evidence the maternal great grandmother was of Yaqui Indian descent. To the extent mother contends that it was in the children's best interest for reunification services to be reinstated because reunification with mother would preserve their Indian heritage, we disagree with the contention. The children's Indian heritage was not a changed circumstance. The heritage they had prior to the date the court terminated reunification services did not change. In any event, it was not beyond the bounds of reason to conclude the children's best interest did not require delaying permanency on the chance mother would succeed in reunifying so that the children's Indian heritage would be preserved.

[6] There is no practical difference between the two standards of review when reviewing custody determinations. (See *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

mother argues, whether a contrary finding might have been made. "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citations.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321; see also *In re Dakota H., supra,* at p. 228 ["[w]e do not reweigh the evidence"].)

Under section 366.26, subdivision (c)(1)(B)(i), if reunification services have been terminated and the child is adoptable, the dependency court must terminate parental rights unless it "finds a compelling reason for determining that termination would be detrimental to the child due to [the circumstance that the parent has] [¶] . . . maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

" 'Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability.' [Citation.] 'A section 366.26 hearing . . . is a hearing specifically designed to select and implement a permanent plan for the child.' [Citation.] It is designed to protect children's 'compelling rights . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] 'The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52-53.) "At this stage of the proceedings, if an appropriate adoptive family is or likely will be available, the Legislature has made adoption the preferred choice. [Citation.]" (*Id.* at p. 49; see also § 366.26, subd. (b)(1) [adoption is the preferred plan].) " '[I]t becomes inimical to the interests of the [child] to heavily burden efforts to place the child in a permanent alternative home.' [Citation.] The statutory exceptions merely permit the court, in

8

*exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*In re Celine R., supra,* at p. 53.)

"[T]he exception does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1348.) The type of parent-child relationship that triggers the exception is a relationship which " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. . . .' [Citation.]" (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534; accord, *In re Jasmine D., supra,* at pp. 1347-1350.)

Substantial evidence supports the finding that no exceptional circumstances existed under section 366.26, subdivision (c)(1)(B)(i) that required depriving the children of a permanent, adoptive home. The evidence mother missed most of the scheduled visits during the reunification period and almost half of the visits allowed by the court after the reunification period ended supports finding that mother did not maintain regular visitation and contact, as required by the first prong of the exception. Concerning the second prong – the children would benefit from continuing the relationship with mother - substantial evidence establishes that mother's relationship with the children did not promote their well-being " 'to such a degree as to outweigh the well-being the child[ren] would gain in a permanent home with [a] new, adoptive parent[]. . . .' [Citation.]" (*In re Brandon C., supra,* 71 Cal.App.4th at p. 1534.) The caretakers, who provided a safe, stable, loving home for the children, the only home the children knew, wanted to adopt the children. As mother had a history of abusing drugs and criminal conduct, and was not rehabilitated, there was a risk that continued contact would expose the children to criminal activity and the ill effects of a drug-abusing lifestyle. As mother had a history of missed and sporadic visitation, there was a risk continued contact would be destabilizing and cause disappointment. The facts mother never had custody of the children, visitation did not lead to the development of a parent-child relationship, the children did not refer to her as their mother, and daughter rejected mother, indicate the children did not have an

9

important bond with mother.  In these circumstances, the conclusion reached by the juvenile court that no compelling reason existed to conclude termination of parental rights would be detrimental is amply supported by substantial evidence and not an abuse of discretion.

3. *Substantial evidence supports the ICWA notice.*

Mother contends the juvenile court erred in failing to require the Department to send another notice to the tribe based on new evidence.  We disagree with the contention.

a. *Standard of review.*

We review the dependency court's determination "whether proper notice was given under ICWA and whether ICWA applies to the proceedings" for substantial evidence.  (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.)  In determining whether substantial evidence supports the factual findings, "all intendments are in favor of the judgment and [we] must accept as true the evidence which tends to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been drawn by the trial court."  (*Crogan v. Metz*, *supra*, 47 Cal.2d at pp. 403-404.)

b. *Relevant facts and procedure.*

Maternal grandmother stated maternal great grandmother was of Yaqui descent, but she did not know if maternal great grandmother was registered with the tribe.  Maternal grandmother's cousin stated she, her father, and two siblings were registered with the tribe.  The children, mother, and maternal grandmother were not registered with the tribe.  The Department sent notice of the proceedings to the tribe on September 28, 2012.

On October 19, 2012, the Pascua Yaqui Tribe responded that mother was not a member of the tribe, the children were not members of the tribe, and the children were not eligible for membership in the tribe.  Based on the children's ineligibility, the tribe elected not to intervene in the proceeding.  On November 7, 2011, the juvenile court found the parents were not members of any Indian tribe.

10

Maternal grandmother applied to the Pascua Yaqui Tribe for membership in the tribe. On February 15, 2013, the tribe informed her by letter that she did not qualify for membership because she was not a direct lineal descendant, as required for membership by the tribe's constitution and membership ordinance. A direct lineal descendant is one who was born to a member listed on the base membership roll dated September 18, 1980 or who is of Yaqui blood and, within three years after October 14, 1994, applied for membership. Moreover, the constitution and membership ordinance provide that children born to tribe members must be at least one quarter degree Pascua Yaqui Indian blood in order to be eligible for membership. The tribe stated to maternal grandmother: "Your mother . . . is not listed on the [roll of the tribe], however she is recognized to be of Yaqui descent. The family member(s) that you have identified on your application as enrolled member(s) applied and were approved under [the public enrollment act]." The tribe stated its letter was not a formal rejection and the enrollment application would be "forward[ed] . . . for review and formal Tribal Council rejection by way of tribal resolution."

At the hearing on October 31, 2013, father contended the February 15, 2013 letter constituted a change of circumstance which required re-noticing the tribe. The juvenile court disagreed. After reviewing all the documents concerning the issue, the court found "the children are not registered with any tribe. The mother is not registered with any tribe. The maternal grandmother who would be the only other person that could be registered with a tribe is not registered with any tribe. The tribe has been notified. They indicated they are not going to intervene. This is not an ICWA case."

c. *The ICWA.*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) The substantive provisions of the ICWA apply to the minor's placement in adoption and

11

foster care and to other hearings, such as termination of parental rights, which affect the minor's status."[7] (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1266.)

When the dependency court knows or has reason to know that an Indian child is involved, notice of the dependency proceeding must be given to the tribe. (25 U.S.C. § 1912, subd. (a).) An Indian child is defined in the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903, subd. (4).) "A determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, . . . shall be conclusive." (§ 224.3, subd. (e)(1).)

The court and the Department have a continuing duty to inquire whether a child in a dependency proceeding is an Indian child. (§ 224.3, subd. (a).) If there is reason to know an Indian child is involved, the tribe must be contacted concerning the child's membership status and eligibility and notice of the proceeding must be sent to the tribe. (§ 244.3, subds. (c), (d).)

"Notwithstanding a determination that the Indian Child Welfare Act does not apply to the proceedings . . . , if the court, social worker, or probation officer subsequently receives any information required under paragraph (5) of subdivision (a) of Section 224.2[[8]] that was not previously available or included in the notice issued under Section 224.2, the social worker or probation officer shall provide the additional information to any tribes entitled to notice . . . ." (§ 244.3, subd. (f).)

---

[7] Where an Indian child is involved, the ICWA's substantive provisions include the requirements, among others, that "active efforts" must be made to prevent the breakup of the Indian family before a foster care placement is made or parental rights terminated, the evidence of detriment to the child supporting termination of parental rights must be "beyond a reasonable doubt, including testimony of qualified expert witnesses[,]" preference in adoptive placements must be given to the child's extended family, tribal members, or other Indian families, and the tribe has the right to intervene in the dependency proceeding. (25 U.S.C., §§ 1912, subds. (d), (f), 1915, subd. (a), and 1911, subd. (c).)

[8] The only new information listed in section 224.2, subdivision (a)(5) that is pertinent in this appeal is the tribal enrollment number of a grandparent. (§ 224.2, subd. (a)(5)(C).)

12

d. *Substantial evidence.*

Mother acknowledges the notice sent to the tribe September 28, 2012 was proper. Subsequently, maternal grandmother applied for membership in the tribe and was informed by the tribe, by letter of February 15, 2013, that she was not eligible for membership in the tribe. Mother contends the statement in the letter, that the letter was not a formal rejection and the enrollment application would be "forward[ed] . . . for review and formal Tribal Council rejection by way of tribal resolution" was new information that required sending new notice to the tribe of the dependency proceeding and maternal grandmother's pending application.

Substantial evidence supports the conclusion that the February 15th letter did not provide reason to know the children were Indian children and, thus, did not require sending new notice to the tribe. Maternal grandmother was not eligible for membership, because she did not satisfy the qualifications required by the tribe's constitution and membership ordinance: she was not the child of a member. The fact a formal rejection of maternal grandmother's membership application could only be issued by the Tribal Council did not mean there was a possibility maternal grandmother's eligibility status would change or the application would be granted. In any event, no matter what action the tribe formally took on maternal grandmother's application, the tribe's prior determination the children were not members of the tribe and were not eligible for membership would not change. The children were not members, born of a member who was enrolled as of 1980 or 1997, or one-quarter degree Pascua Yaqui Indian blood, as required by the tribe's constitution and membership ordinance. Membership of maternal grandmother in the tribe would not render the children members or eligible for membership. The inescapable conclusion from the evidence is that the February 15, 2013 letter did not give the court reason to know the children were (1) members of an Indian tribe or (2) eligible for membership and were the biological children of a member. (25 U.S.C. § 1903, subd. (4) [definition of Indian child].) Substantial evidence supports the determination to not send new notice to the tribe and the conclusion the ICWA did not apply.

13

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:



KITCHING, J.



ALDRICH, J.