Filed 11/6/15  In re Catalina C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CATALINA C., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. VICTORIA C., Defendant and Appellant. | F071555 (Super. Ct. No. 516717) **OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*　　　Before Levy, Acting P.J., Detjen, J. and Peña, J.

Appellant Victoria C. is the mother of 10-year-old Catalina C., the subject of this appeal. In February 2015, the juvenile court terminated Victoria's parental rights (Welf. & Inst. Code, § 366.26)[1] and ordered the Stanislaus County Community Services Agency (agency) to arrange a final visit. The agency subsequently filed a petition under section 388 asking the court to vacate its visitation order and prevailed. Victoria contends the juvenile court erred in granting the petition because the agency failed to show there was a change in circumstances to warrant modifying the order. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

This appeal comes to us in the wake of the juvenile court's order terminating Victoria's parental rights as to her daughter, Catalina. Prior to terminating Victoria's parental rights, the juvenile court provided her over a year of reunification services. During that time, Victoria appealed from orders related to the disposition of the case and termination of reunification services and we affirmed the orders. We are therefore very familiar with the facts in her case.

The issue Victoria raises on this appeal is very discrete. It concerns the juvenile court's order granting a section 388 petition effectively depriving Victoria of a final visit with her daughter. In order to grant a section 388 petition, the juvenile court must find there has been a change in circumstances. Victoria contends there is insufficient evidence to support such a finding and therefore the juvenile court erred.

The question of whether a change of circumstances exists requires the juvenile court to make a factual determination. In so doing, the court may consider the entire factual and procedural history of the case. (*In re Justice P*. (2004) 123 Cal.App.4th 181, 189.) With that in mind, we focus our summary in this case on only those facts from the inception that are germane to Victoria's issue and provide a context for the juvenile court's ruling.

---

[1]    All statutory references are to the Welfare and Institutions Code.

Victoria has a significant history of physical violence and emotional instability. As far back as 2008, the agency received reports that Victoria struck then three-year-old Catalina in the face. Victoria expressed being overwhelmed and having suicidal and homicidal thoughts. She said she was sick and tired of dealing with Catalina. The agency continued to receive reports of physical abuse over the years. In 2011, the agency began receiving reports that Victoria engaged in domestic violence with a woman. The following year, the agency opened a voluntary family maintenance case after Victoria's former partner bit Victoria's ear, choked her, and beat her up. In January 2013, Victoria was arrested for armed robbery after she assaulted her former partner with scissors and stole her dog. Victoria was released but arrested not long after for armed robbery and conspiracy.

The incident which prompted these proceedings occurred in June 2013 after Catalina was placed with her maternal grandmother. Then seven-year-old Catalina was watching television at approximately 11:30 p.m. while her grandmother slept. Catalina tried to light candles with a childproof lighter and caught her dress on fire. She was treated for third degree burns over approximately half of her body and underwent skin graft surgeries. At the time, Victoria was incarcerated.

The juvenile court exercised its dependency jurisdiction over Catalina, ordered her removed from Victoria's custody and provided Victoria over a year of reunification services, including weekly supervised visits.[2] However, Victoria did not make significant progress toward reunifying with Catalina. She blamed the agency for her circumstances, accusing the agency of conspiring against her. She blamed Catalina for inciting her anger, claiming Catalina knew how to "push her buttons." She was also verbally abusive to Catalina and, at times, emotionally cruel. Victoria's visits with

_____

[2]     Victoria appealed from the juvenile court's order removing Catalina from her custody. We affirmed the juvenile court's decision in case No. F068475. (*In re Catalina C*. (July 11, 2014, F068475) [nonpub. opn.].)

Catalina remained supervised at Catalina's request because Catalina was afraid that Victoria would hit her if no one was around. At that time, Catalina stated she did not ever want to return to her mother and believed it was for the best.

Notably, during the reunification period, Victoria was evaluated by a psychologist who diagnosed her with major depressive disorder and stated that she displayed the essential features of posttraumatic stress disorder (PTSD) and many borderline personality traits. The psychologist opined that Victoria's greatest obstacle to successful reunification was her maladaptive approach in dealing with life stressors.

In October 2014, the juvenile court terminated Victoria's reunification services and set a section 366.26 hearing for February 2015. In its report for the section 366.26 hearing, the agency recommended the juvenile court select adoption as Catalina's permanent plan. According to the agency, Catalina was making progress, but needed intensive care for her physical and emotional needs. Catalina was placed with foster parents who were committed to adopting her. Meanwhile Victoria continued to blame others for her circumstances and even blamed Catalina for the termination of her reunification services.

In January 2015, Victoria filed a "Request to Change Court Order" (JV-180) under section 388 (section 388 petition) asking the juvenile court to reinstate reunification services and increase her visitation. She attached certificates showing she completed an anger management course and a letter describing her ongoing participation in anger management, domestic violence counseling, individual counseling and non-violent parenting. The juvenile court summarily denied Victoria's section 388 petition and we affirmed the court's decision. (*In re Catalina C*. (Aug. 12, 2015, F071008) [nonpub. opn.], review pending, petition filed Sept. 22, 2015, S229452.)

In February 2015, the juvenile court convened the section 366.26 hearing. Minor's counsel made an offer of proof that if called Catalina would testify that she would like to see her mother weekly for two hours outside of the county office but

4.

wanted to be adopted by her foster parents. Victoria testified that her last visit with Catalina was on January 23, 2015, and Catalina stated she wanted to go home with her. Social worker Christine Shahbazian testified that Catalina vacillated on whether she wanted to return to Victoria.

The juvenile court terminated Victoria's parental rights and directed the agency to schedule a final visit that same month. The court stated "there should be a final visit" but cautioned Victoria that if "things [got] out of hand emotionally[,] the visit would have to be stopped."

On February 20, 2015, the agency filed a section 388 petition seeking to modify the juvenile court's order granting a final visit. It asked that no in-person final visit occur. In the section of the JV-180 requiring the petitioner to explain how the circumstances have changed since the court's prior order, the agency referenced several events that occurred subsequent to the section 366.26 hearing. Catalina reported being contacted at her school by "Aunt Cookie," a friend of Victoria's. Aunt Cookie told Catalina what happened at the section 366.26 hearing and told her that her "mother was very upset and cried." Aunt Cookie gave Catalina her phone number on a piece of paper and told her that she knew where the foster parents lived and could pick her up. Catalina gave the paper to her foster parents. Aunt Cookie agreed not to have any further contact with Catalina after being confronted by school officials. She informed them that she had received several calls from Victoria, including one that alarmed her. Victoria gave her the impression she intended to go to the school and attempt to take Catalina.

The second event occurred on February 18, 2015, when Victoria called the visitation supervisor about arranging the visit. Victoria became very hostile to the visitation supervisor and accused her of lying. Victoria also accused Christine Shahbazian of lying and stated: "That f***ing bitch Christine stood up in court and lied." "They're taking my child away because of that bitch Christine lying in court. They're not going to take my kid away because of a bunch of lies."

5.

The juvenile court issued a temporary order suspending the final visit and requested input from Catalina's counselor as to whether a final visit would be beneficial or detrimental to her. Catalina's counselor said that she was treating Catalina for PTSD but had not worked with her for very long. Consequently, she could not provide the court a recommendation except to say that she was willing to help prepare Catalina for a final visit if such occurred.

In April 2015, the juvenile court concluded the hearing on the agency's section 388 petition. The court proceeded on the documents submitted and invited comment from counsel and the court appointed special advocate (CASA). The CASA told the court that she spent time with Catalina once a week and that Catalina had not requested to see her mother.

The juvenile court granted the agency's section 388 petition, observing that Victoria was "very emotionally charged" and that Catalina had been through a lot. The court found that the petition set forth evidence that a significant change of circumstances had occurred and that it would be in Catalina's best interest to forgo a final visit.

This appeal ensued.

## DISCUSSION

Victoria contends that the juvenile court abused its discretion in granting the agency's section 388 petition because the agency failed to show that her circumstances had changed and that abandoning a final visit was in Catalina's best interest. We disagree.

Under section 388,[3] the juvenile court should modify an order if circumstances have changed such that the modification would be in the child's best interest. (*In re*

---

[3] Section 388 provides in pertinent part that a parent "(a)(1) … may, upon grounds of change of circumstance or new evidence, petition the court … for a hearing to change, modify, or set aside any order of court previously made …. [¶] … [¶] (d) If it appears that the best interests of the child … may be promoted by the proposed change of order …."

*Kimberly F.* (1997) 56 Cal.App.4th 519, 526 & fn. 5.) "Whether a previously made order should be modified rests within the [juvenile court's] discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.) """The appropriate test for abuse of discretion is whether the [juvenile court] exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the [juvenile court]."' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Abuse of discretion is established if the determination is not supported by substantial evidence. (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 796.) In determining whether substantial evidence supports the factual findings, "all intendments are in favor of the judgment and [we] must accept as true the evidence which tends to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been drawn by the trial court." (*Crogan v. Metz* (1956) 47 Cal.2d 398, 403-404.) The party requesting the change of order has the burden of proof. (Cal. Rules of Court, rule 5.570(h)(1); *In re Michael B., supra,* at p. 1703.)

As changed circumstances, the agency alleged facts to show that following the juvenile court's order for a final visit, Victoria coerced Aunt Cookie into manipulating Catalina by letting her know that Victoria was saddened by the result of the section 366.26 hearing and encouraging Catalina to have unauthorized contact with Victoria. According to Aunt Cookie, Victoria also intimated that she would take matters into her own hands by kidnapping Catalina from school.

Victoria argues the juvenile court was fully aware of her history when it ordered the visit and that her behavior as described in the petition was not out of the ordinary for her. She further argues that any notion that she would be violent or act out against Catalina was purely speculative and did not constitute a change in circumstances.

We conclude substantial evidence supports the juvenile court's factual determination a change of circumstances occurred subsequent to its order for a final visit. When the court granted Victoria a final visit, it was aware there was a risk that Victoria might act out emotionally and cautioned against it. Nevertheless, the court felt that such a visit should occur and knew that it would be supervised. What subsequently changed was the extent to which Victoria might resort to take custody of Catalina and her plan to disregard the court's warning as evidenced by her conversations with and manipulation of Aunt Cookie. Given Victoria's violent history, the possibility that she would harm someone or kidnap Catalina is not speculative. Rather, it would be consistent with the maladaptive behavior the psychologist said she employed when dealing with stressful life situations.

Further, we find no abuse of discretion in the juvenile court's modification of its visitation order. Catalina was afraid of her mother and had ambivalent feelings toward her. In addition, Catalina was not asking to see Victoria. Under those circumstances and given Victoria's unpredictability and the high tension a final visit would present, the court properly acted in Catalina's best interest by not allowing such a visit.

We find no error and affirm.

## DISPOSITION

The judgment is affirmed.